Filed 6/3/14  Lim v. Villa Garfield CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ANN LIM et al., | B247618 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. GC045112) |
| v. | |
| VILLA GARFIELD, INC., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County. Anthony J. Mohr, Judge.  Reversed.

Steiner & Libo, Leonard Steiner, and Jason Carter for Defendant and Appellant.

Michael T. Chulak & Associates and Andrea Breuer for Plaintiffs and Respondents.

_____

Villa Garfield, Inc. (Developer) appeals from orders granting prejudgment attachments and attorney fees to Ann Lim, Maria Zepeda, Tak Wong, Helen Wong, Lily Yeung, Fat Ki Yeung, Ping Tu, Petrina Ho, and Mae Young (collectively Lim Parties) in an action alleging, inter alia, financial abuse of elders. (Welf. & Inst. Code, §§ 15610.30, 15657.5.)[1] We reverse the attachment orders because they are not supported by sufficient admissible evidence of the Lim Parties' claims. The issues pertaining to the award of attorney fees are moot.

## FACTS

The Developer entered into a contract styled "Master Agreement And Covenant Concerning Use and Resale of Residential Units" (Master Agreement) with the City of Monterey Park (City) regarding the development of condos (Villa Garfield). The recitals stated that the approvals "allow the construction of a senior affordable housing/ commercial mixed-use project at the Property, with all 87 residential condominium units (affordable homes) to be sold and/or leased at non-market rates." In its covenants, the Developer agreed to sell a Low Income Affordable Unit only to a Low Income Qualified Household and a Moderate Income Affordable Unit only to a Moderate Income Qualified Household. It also agreed that the units had to be sold for a price that did not exceed the Affordable Housing Cost.

The definitions section stated: "'Affordable Housing Cost' means for Qualified Households, the purchase price (with 75% loan to value financing) for which the income of a Low Income Qualified Household or a Moderate Income Qualified Household will qualify for the purchase of a Low Income Affordable Unit or a Moderate Income Affordable Unit, respectively, and shall be computed so that the total mortgage payment, insurance, property taxes, association fees for the Affordable Unit does not exceed 35% of the gross income of the Qualified Household." A Low Income Qualified Household was defined to mean a household earning up to 80 percent of the median area income for Los Angeles County "as defined by [the United States Department of Housing and Urban

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

Development (HUD)], as adjusted for household size by the City in accordance with the City's policies and procedures, provided that the prospective buyer or tenant is otherwise qualified for the purchase of the Affordable Unit under the City's policies and procedures[.]" A Moderate Income Qualified Household was similarly defined, except the household earning had to be between 80 percent and 120 percent of the median area income.

Setting an absolute ceiling on prices, the Developer's covenants provided: "The parties hereby agree that the initial purchase price for a Low Income Affordable Unit shall not exceed $249,770; the initial purchase price for a one (1) bedroom Moderate Income Affordable Unit shall not exceed $299,670; and the initial price for a two (2) bedroom Moderate Income Affordable Unit shall not exceed $369,599. If any Affordable Unit is sold by the Developer after April 30, 2007, the foregoing initial purchase prices shall be adjusted by a factor equal to the percentage increase in the Consumer Price Index for the 2006 calendar year; and on April 30 of each year thereafter, such prices shall be adjusted by a factor equal to the percentage increase in the Consumer Price Index for the preceding calendar year."

In June 2006, Maria Zepeda purchased a one-bedroom Low Income Affordable Unit for $249,770 and paid a mandatory consulting fee of $30,000 to the Developer's principals and managers. On April 30, 2007, Tak Wong and Helen Wong entered into an agreement to purchase a two-bedroom Moderate Income Affordable Unit for $430,000. Later in 2007, Ann Lim purchased a one-bedroom Low Income Affordable Unit for $270,000, Lily Yeung and Fat Ki Yeung purchased a one-bedroom Low Income Affordable Unit for $280,000, Ping Tu purchased a one-bedroom Low Income Affordable Unit for $281,200, Petrina Ho purchased a one-bedroom Low Income Affordable Unit for $280,000, and Mae Young purchased a two-bedroom Moderate Income Affordable Unit for $429,000.

Jack Wong, a consultant for the City who works with the planning department, attended a public meeting at Villa Garfield on June 24, 2010. He gave a power point

presentation regarding the Master Agreement, and explained that it contained price restrictions for all units.

Subsequently, the Lim Parties sued the Developer for, inter alia, financial abuse of elders on the theory that they had been overcharged for their units. Pursuant to section 15657.01, the Lim Parties filed applications for prejudgment attachment orders.

The Developer opposed and filed evidentiary objections. It argued that the applications were not supported by sufficient admissible evidence, and the Lim Parties had not established the probable validity of their claims or the amounts that they were seeking by way of attachment.

The trial court overruled the Developer's objections, granted the applications and awarded costs and attorney fees. The amounts of the attachments, which included $1,000 in attorney fees and $40 in costs, were these: Maria Zepeda ($262,040); Tak Wong and Helen Wong ($463,590); Ann Lim ($247,540); Lily Yeung and Fat Ki Yeung ($262,040); Ping Tu ($191,280); Petrina Ho ($262,040); and Mae Young ($217,090).

This timely appeal followed.

## DISCUSSION

The question presented is whether the Lim Parties submitted sufficient admissible evidence to support their claims. We review the trial court's evidentiary rulings for an abuse of discretion (*Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1317), and we examine its factual findings under the substantial evidence test. (S*eries AGI West Linn of Appian Group Investors DE, LLC v. Eves* (2013) 217 Cal.App.4th 156, 162 (*Series*).)

## I. Elder Abuse.

Under the elder abuse laws, an elder is any person residing in California who is 65 years of age or older. (§ 15610.27.)

Section 15610.30 provides, in part: "(a) 'Financial abuse' of an elder or dependent adult occurs when a person or entity does any of the following: [¶] (1) Takes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both. [¶] (2) Assists in

4

taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both.  [¶] (3) Takes, secretes, appropriates, obtains, or retains, or assists in taking, secreting, appropriating, obtaining, or retaining, real or personal property of an elder or dependent adult by undue influence, as defined in Section 15610.70.  [¶]  (b) A person or entity shall be deemed to have taken, secreted, appropriated, obtained, or retained property for a wrongful use if, among other things, the person or entity takes, secretes, appropriates, obtains, or retains the property and the person or entity knew or should have known that this conduct is likely to be harmful to the elder or dependent adult.”

Pursuant to section 15657.5, an elder may sue a perpetrator of financial abuse for damages and recover attorney fees and costs.

## II.  The Relevant Attachment Law.

“Notwithstanding Section 483.010 of the Code of Civil Procedure, an attachment may be issued in any action for damages pursuant to Section 15657.5 for financial abuse of an elder or dependent adult, as defined in Section 15610.30.  The other provisions of the Code of Civil Procedure not inconsistent with this article shall govern the issuance of an attachment pursuant to this section.”  (§ 15657.01.)

“The application shall be supported by an affidavit showing that the plaintiff on the facts presented would be entitled to a judgment on the claim upon which the attachment is based.”  (Code Civ. Proc., § 484.030.)  “The facts stated in each affidavit filed pursuant to this title shall be set forth with particularity.”  (Code Civ. Proc., § 482.040.)  To obtain an attachment, a plaintiff must demonstrate the probable validity of the claim.  (S*eries, supra,* 217 Cal.App.4th at p. 162.)  “A claim has probable validity when it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim.”  (Code Civ. Proc., § 481.190.)

## III.  Low or Moderate Income Qualified Household.

The Developer contends that the Lim Parties failed to prove that they were low or moderate income households.  We agree.

5

In their declarations, the Lim Parties stated their approximate annual incomes, and that they qualified as low/moderate income households. The Developer objected that the declarations lacked foundation. The trial court overruled the objections. As to the averments that the Lim Parties qualified as low/moderate income households, the trial court abused its discretion. Per Evidence Code section 403, subdivision (a), the proponent of evidence must prove the existence of a preliminary fact[2]—i.e., lay a proper foundation—when: the relevance of the evidence depends on the existence of the preliminary fact. The relevance, and therefore the admissibility, of the Lim Parties' qualification statements was dependent upon the following preliminary facts: (1) the median area income for Los Angeles County as defined by HUD; (2) how the median area income was adjusted for household size by the City in accordance with its policies and procedures; (3) each of the Lim Parties was otherwise qualified for the purchase or lease under the City's policies and procedures; and (4) based on their annual incomes, they fell within the range of a low or moderate income qualified household. The Lim Parties' declarations made no attempt to establish any of these preliminary facts.

As additional proof that they qualified, the Lim Parties offered the declaration of Jack Wong. Exhibit B to that declaration contained slides he showed at the public meeting on June 24, 2010. Page 11 set forth "Income Limits." It identified "Low Income 80% AMI" and "Moderate Income 120% AMI" for households that had one to five occupants. For example, "Low Income 80% AMI" for a household of one was identified at $46,400 and "Moderate Income 120% AMI" for a household of one was identified as $52,900. The bottom of the slide stated: "Source: CA Housing and Community Development Department for LA/LB SMSA 2010." In his declaration, Jack Wong does not mention, authenticate, verify or provide a foundation for any of the information in the slide. The trial court overruled an objection based on lack of

---

[2]  Evidence Code section 400 provides: "As used in this article, 'preliminary fact' means a fact upon the existence or nonexistence of which depends the admissibility or inadmissibility of evidence. The phrase 'the admissibility or inadmissibility of evidence' includes the qualification or disqualification of a person to be a witness and the existence or nonexistence of a privilege."

6

foundation. Once again, we find error. To be relevant, and therefore admissible, the slide had to establish the median area income for Los Angeles County, as defined by HUD. The slide did not cite HUD as a source, so the figures it provided lacked foundation. Moreover, the source cited by the slide was from 2010, which is irrelevant. Although the Master Agreement does not state that the median area income must come from the statistics of a particular year, it is reasonable to assume that a purchase in 2006 and a purchase in 2007, respectively, had to be assessed based on the most recent median area income statistics. Presumably, the most recent statistics from those years came from 2005 and 2006.

## IV. The Overcharges.

The Developer assigns error to the finding that the Lim Parties established overcharges. This position is well taken.

The Lim Parties declared that they were overcharged in the following amounts: Maria Zepeda ($180,000); Tak Wong and Helen Wong ($319,000); Ann Lim ($170,000); Lily Yeung and Fat Ki Yeung ($180,000); Ping Tu ($131,200); Petrina Ho ($180,000); and Mae Young ($149,000). The Developer objected, inter alia, based on lack of foundation.

To prevail, the Lim Parties had to: (1) calculate 35 percent of their gross incomes at the time each person or couple purchased a unit; (2) for each person or couple, establish a housing cost (mortgage payment plus the cost of insurance, property taxes, and association fees) that did not exceed 35 percent of their gross incomes; (3) reverse engineer the mortgage payment into a purchase price with 75 percent loan to value financing; and (4) subtract the proper purchase prices from the actual purchase prices to arrive at their damages.

The evidence of the alleged overcharges lacked foundation, and the trial court should have sustained the Developer's objections. None of the Lim Parties calculated 35 percent of their gross incomes. In addition, they did not break down their mortgage payments—including their interest rates, how much of each payment pertained to principal and interest, and how the payments were amortized—nor did they identify the

7

specific cost of their insurance, property taxes, and association fees. Rather, they simply stated what their total monthly housing costs should be. Moreover, they skewed their purported monthly housing costs by improperly adding in the cost of utilities. Thus, the Lim Parties failed to establish the preliminary facts essential to identifying overcharges.

Even if the total monthly housing costs were supported by the evidence, the Lim Parties failed to explain how those costs translated into a purchase price. Without an explanation of how the Lim Parties derived the purchase prices they claim would have been appropriate, they cannot prevail.

All other issues are moot.

## DISPOSITION

The orders are reversed.

The Developer shall recover its costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
           ASHMANN-GERST

We concur:

_____, P. J.
    BOREN

_____, J.[*]
    FERNS

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.